## John P. Henderson v. Virden Coal Co., Charles A. Starne, James R. Hoyt, Thomas Graham and William Graham.

1. DEMURRERS—*In Chancery, Nature of, etc.*—A demurrer in chancery is always founded on some strong point of law going to the absolute denial of the relief sought. Defects in substance are not supplied or aided by it, nor defective statements of title or claims to relief cured by it. The demurrer only admits that which is well stated or pleaded, and not matters of law suggested in the bill or inferred from the facts stated in it. The pleading demurred to is to be taken most strongly against the pleader. His conclusions from the facts are not admitted.

2. LEASE—*When Mutual Covenants Are Binding on Lessee.*—Where a lease contains mutual covenants and is executed by the lessor only, by delivery to and acceptance by the lessee, it becomes binding upon him as well as the lessor, although not signed by him.

3. ULTRA VIRES—*Who Can Raise the Question.*—Where a corporation created by the laws of this State is authorized by its charter to purchase real estate, but is limited in so doing, a conveyance executed to it by a party having capacity to make a conveyance, will vest the title in such corporation, and the question as to whether the corporation has exceeded its limits is between the corporation and the State, and in it the grantor has no concern.

4. FRAUD—*Failure of a Corporation to Disclose the Provisions of Its Charter.*—Where a conveyance of real estate to a corporation, limited by its charter as to its right to purchase real estate, the fact that it does not disclose the provisions of its charter to the vendor is not a fraud.

5. CONTRACTS—*When Void Because Against Public Policy.*—A contract to be void as against public policy, the consideration must not only be valuable, but it must be unlawful and repugnant to law, sound policy or good morals. *Ex turpi contractu, actio non oretu.*

6. PERPETUITY—*Defined.*—A perpetuity is defined to be a limitation, taking the subject thereof out of commerce for a longer period of time than a life or lives in being and twenty-one years · beyond, and in case of a posthumous child, a few months more allowing for time of gestation.

7. SAME—*Application of the Term.*—A lease in which there is no provision suspending the power of alienation or limitation, taking · the premises leased out of commerce, is not repugnant as against the law of perpetuities.

8. STATUTE OF LIMITATIONS—*Right of Entry On Real Estate, When Barred.*—The statute of limitations pertaining to the right of entry on real property applies to cases where a person has been disseized or where one is asserting an adverse, hostile claim to and inconsistent with the entry.

9. SAME—*Where the Statute Does Not Apply.*—Where the owner of a coal mine, as lessee, is only claiming the right to mine and remove the coal, and other underlying minerals, through a shaft sunk upon his own adjacent property, and not asserting any right to enter upon the surface, the statute of limitations, providing that no person shall have a right of entry into lands unless he makes such entry within twenty years after such right accrues, does not apply.

10. POSSESSION—*Of Lands Leased.*—The legal possession of premises leased, upon the making and delivery of the lease, if there is no one in possession holding adversely to the lessor, passes to the lessee.

**Bill to Have Conveyances of Real Estate Set Aside** as fraudulent and clouds upon title. Trial in the Circuit Court of Macoupin County; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Bill dismissed on demurrer. Appeal by complainant. Heard in this court at the November term, 1897. Affirmed. Opinion filed June 3, 1898. Rehearing denied November 29, 1898.

The appellant filed his bill in chancery in this case in the Circuit Court of Macoupin County, against the appellees, to have certain conveyances of real estate set aside, as fraudulent, void and inoperative, because a cloud upon his title. To this bill the appellees filed a special demurrer, which was sustained by the court and appellant elected to stand by his bill. The court dismissed the bill at appellant's costs.

It is averred in the bill by appellant that he is the owner in fee simple and in possession of 320 acres of land in Sec. 10, T. 12 N., R. 6, west of the 3d P. M., in Macoupin county, Illinois, and that such ownership included the coal and other mineral deposits underlying the same; that his father, James H. Henderson, owned in fee simple and occupied such premises as improved lands, on the 25th day of November, 1869; that upon his father's death in August, 1883, he derived his title to said lands as devisee and trustee under his father's will and through conveyances from certain devisees; that James H. Henderson, the father of appellant, being the owner and occupant of such premises near Virden, Macoupin county, Illinois, together with other land owners, on the 25th day of November, 1869, entered into a written agreement or lease with the Virden Coal Mining Co., a corporation organized under a special act of the General Assembly of the State of Illinois, approved April 19, 1869, by which they devised, leased and granted unto the Virden Coal Mining Co. the right to mine and remove the coal and other mineral deposits underlying said lands for the term of 999 years, for a valuable consideration, to wit, the benefit and increase in value to the lands of the lessors, near the town of Virden, Illinois, which would result from the opening of a coal mine at said town, and in consideration that the Virden Coal Mining Company would sink a shaft and open a coal mine at Virden, on other land belonging to the company, within four years from the date of the lease, through which to enter upon and remove the coal and other mineral deposits under the land so leased. The right to so mine and remove the coal and other mineral deposits was to be exclusive, but conditioned that a failure

upon the part of the lessee to sink such shaft and open the coal mine within four years after the date of the contract should operate as a forfeiture and cancellation of the same.

This lease was prepared by one Murry Cheney, at the request of the lessors, and by them signed and acknowledged, and then turned over by them to Cheney for him to have the lessee sign and acknowledge the same, he, without having the lessee sign and acknowledge the same, delivered this lease to the officers of lessee, who accepted it and retained the possession thereof, and thereafter claimed to own and control the rights therein granted.

This lease was not recorded.

The Virden Coal Mining Company, after the execution and delivery of the lease to it, proceeded to sink a shaft and open a coal mine on the lands belonging to it at the town of Virden, Illinois, as required by the terms of the lease, which was completed, and the mining of coal commenced by it within four years from the date of the lease, to wit, on the 1st day of August, 1870.

The capital stock of the Virden Coal Mining Company was $20,000, and by its charter it was limited in the purchase and ownership, at any one time, of real estate, to a value not to exceed twenty-five per cent of its capital stock. On November 25, 1869, the date the lease was executed, the Virden Coal Mining Company owned in its own name in the county of Macoupin, State of Illinois, real estate of greater value than $5,000.

On the 21st day of February, 1877, the Virden Coal Mining Company conveyed and assigned all its interest acquired under such lease, and the right to mine and remove the coal and other mineral deposits underlying the land, to one John W. Utt, by deed, which was immediately duly recorded.

Afterward John W. Utt died. On September 29, 1890, his executors conveyed and assigned all his interests in said leasehold estate to the Virden Coal Company by deed, which was thereupon duly recorded. It is now claiming to own said estate and is operating the shaft mining and the coal.

Neither the Virden Coal Mining Co., the original lessee, nor any person or corporation claiming under said lease, or appellant or any one under him, has at any time actually entered into said land to mine and remove therefrom the coal and other underlying mineral deposits.

The Virden Coal Company, appellee herein, it is averred in said bill, claims, by virtue of the original lease and the several conveyances of the premises thereunder as stated in said bill, to have the right to mine and remove the coal and other mineral deposits underlying said land through its shaft or any other shafts it may hereafter sink anywhere on lands now or hereafter owned by it, and claims that it may lawfully sell, assign and convey all such rights.

JOHN M. WOODSON, attorney for appellant.

CONKLING & GROUT, attorneys for appellees.

MR. JUSTICE GLENN delivered the opinion of the court.

The demurrer in this case is to the merits, and in bar of the relief sought, and proceeds on the ground that, admitting the facts stated in the bill to be true, the complainant is not entitled to the relief he seeks. A demurrer in chancery is always founded on some strong point of law, going to the absolute denial of the relief sought. Defects in substance are not supplied or aided by it, nor defective statements of title or claims to relief cured by it. The demurrer only admits that which is well stated or pleaded. It does not admit any matters of law which may be suggested in the bill or inferred from the facts stated in it. The pleading demurred to is to be taken most strongly against the one pleading. His conclusions from the facts are not admitted. Stow v. Russell, 36 Ill. 18; Harris et al. v. Cornell et al., 80 Ill. 54; Johnson, Collector, v. Roberts, 102 Ill. 655; Wilkinson v. Gage, 40 Ill. App. 603; American Trust Co. v. M. & N. W. R. R. Co., 157 Ill. 641; Sterling Gas Co. v. Higby, 134 Ill. 557.

At the time James H. Henderson, now deceased, and

father of appellant, on the 25th day of November, 1869, made the lease to the Virden Coal Mining Company for the premises in controversy in this suit, for the term of nine hundred and ninety-nine years, he granted to the lessee the right to mine and remove the coal and other mineral deposit underlying such premises. That portion of the premises above the coal and other mineral deposit remained in him and his devisees after the date of the lease, and this is not inconsistent with the grant. The two separate estates may exist in the same realty at the same time.

It is averred in the bill that appellant devised title to these premises as devisee and trustee by virtue of the will of James H. Henderson, who died in August, 1883. His interest and rights are none other than his father was seized of, at the time of his death.

It appears from the averments in the bill that James H. Henderson entered into a lease with others on the 25th of November, 1869, with the Virden Coal Mining Company, by which he granted and leased to it the right to enter upon, mine and remove the coal and other mineral deposit underlying the same, for the term of nine hundred and ninety-nine years; that such lease was prepared by one Cheney, at the request of John H. Henderson and others joining with him as lessors. After he prepared it they signed the same and delivered it to him to have it signed by the Virden Coal Mining Company; that Cheney delivered it without having it signed. It appears it was accepted by the company and, under the provisions and covenants of the lease, the Virden Coal Mining Company sank a shaft on its premises, adjacent to the premises in controversy, which shaft was completed August 1, 1870, within the time specified in the lease. We think, by accepting the lease and thus acting upon it, it became valid and binding, and the lessor and lessee were bound by its covenants, although it was not signed by the lessee.

It is averred in the bill, the consideration is not sufficient to support the grant. It appears from the allegations in the bill that the consideration was the anticipated benefit

to an increase in value of the lands of lessors near Virden, by reason of the opening of coal mines by lessee on its own lands. This, it is set up in the bill, the Virden Coal Company did. As it is not averred that it did not benefit and increase the value of lessor's lands, as anticipated, and as a pleading is to be construed most strongly against the pleader, the presumption obtains, the anticipated benefits and increased value of lessor's lands were realized.

It is claimed by appellant in his bill that the Virden Coal Mining Company was limited by its charter in the purchase and ownership at any one time, of real estate to a value not exceeding twenty-five per cent of its capital stock, and that the capital stock of such corporation was $20,000. He also charges in his bill that the Virden Coal Mining Company acquired, and claim to hold, more than $5,000 worth of real estate at one time, and thereby had violated their charter. The Virden Coal Mining Company being authorized to purchase and hold lands, and James H. Henderson at the time of the making of the lease having sufficient capacity to convey, the title was obviously vested in the Virden Coal Mining Company by the delivery of the lease, and the question whether it has, by the purchase and use of lands, exceeded the powers conferred by its charter, is one between the State and it, with which James H. Henderson, the grantor, or his devisees, have no concern. Hough v. Cook County Land Co., 73 Ill. 23; Alexander v. Tolleston Club, 110 Ill. 65; Barnes v. Suddard, 117 Ill. 237.

The only charge of fraud in the bill is that it was concealed from the lessors that the Virden Coal Mining Company was limited by its charter in the purchase and ownership, at any one time, of real estate to a value not exceeding twenty-five per cent of its capital stock, and that its capital stock was $20,000, and it had purchased and at that time owned land in Macoupin county of the value of $15,000. It does not appear from any averment in the bill that the lessee, the Virden Coal Mining Company, or any of its officers or agents, were in any way participating in this concealment, nor does it appear what was said or done to con-

ceal these facts from lessors. But as we have above shown it does not concern the lessors whether the lessee violated the provisions of its charter or not; that is a matter between it and the State; and the fact that it did not disclose the provisions of its charter to the lessors would not be a fraud.

It is asserted by appellant's solicitor that. the lease involved in this controversy is void because against public policy. A contract, to be void for this reason, the consideration must not only not be valuable, but it must be an unlawful consideration and repugnant to law, or sound policy or good morals. *Ex turpi contractu, actio non oretu.* 4 Kent's Com. 466. The consideration for the lease in this case was valuable and lawful, and not repugnant to the law, sound policy or good morals.

It is contended by appellant that the lease made by James H. Henderson to the Virden Coal Mining Company is void because it tends to create a perpetuity. A perpetuity is defined to be a limitation, taking the subject thereof out of commerce for a longer period of time than a life or lives in being and twenty-one years beyond; and in case of a posthumous child, a few months more, allowing for time of gestation. Waldo et al. v. Cummings Estate, 45 Ill. 421; Schaefer et al. v. Schaefer, 141 Ill. 337; Hart et al. v. Seymour et al., 147 Ill. 598; Bigelow v. Cady, 171 Ill. 229. From this definition it is clear there was nothing in the provisions of the lease that tended to create a perpetuity. There was no provision in the lease suspending the power of alienation. There was no limitation taking the premises leased out of commerce. The Virden Coal Mining Company could have sold them the next day after the delivery of the lease. It did in fact sell and convey them, as it appears from the bill, to John W. Utt, on February 21, 1877. And on the 9th day of September, 1890, after the death of John W. Utt, his executors sold and conveyed the same premises so leased to the Virden Coal Company, appellee herein, and such deeds of conveyance and assignment were duly recorded.

The appellant invokes the statute of limitations, Sec. 6, Chap. 66, Rev. Stat. of 1845, which is as follows: " No per-

son who now hath or hereafter may have any right of entry into any lands, tenements or hereditaments, shall make any entry therein but within twenty years next after such right shall have accrued, and such person shall be barred from any entry afterward."

He asserts in his bill that no right of entry accrued to the lessee until August 1, 1870, the time the lessee completed the coal shaft on its own lands adjacent to those leased of the lessor, James H. Henderson, and twenty years having intervened between that time and the commencement of this suit, the lessee and its assigns and grantees, not having entered, are now barred from entering by virtue of this statute. The statute now in force is substantially the same as that of 1845, except the provisions are made more clear and explained. The spirit and intent of the statutes are the same. Rev. Stat. 1897, Chap. 83, Secs. 1, 2 and 3. Both statutes refer to cases where a person has been disseized or where one is asserting an adverse claim to and inconsistent with the right of entry. The claim must be hostile. The appellee is only claiming the right to mine and remove the coal and other underlying mineral deposits through a shaft sunk upon their own adjacent property. They are not asserting any right to enter upon the surface. The lessor, James H. Henderson, in his lifetime did not claim any right inconsistent with or adverse to the rights claimed by the lessee or its assigns or grantees; neither did appellant, prior to exhibiting the bill in this case in court. If James H. Henderson had, during his lifetime and after the execution and delivery of the lease, mined and removed any of the coal from the premises, this would have been a disseizure, and a right of entry would have accrued to the lessee of the premises leased, or as to his assigns or grantees, and from this time the statute would begin to run.

Neither the lessor nor lessee, or those claiming under them or either of them, entered upon the leased premises and mined or removed any coal.

The legal possession of the premises leased, upon the making and delivery of the lease, if there was no one in possession holding adversely to the lessor, passed to the lessee.

There are no allegations in the bill to show that James H. Henderson in his lifetime, or any one claiming under him, repudiated the lease or claimed any rights in the coal and other mineral deposits mentioned and described in the lease adverse to the lessee prior to the filing of the bill in this case. If the contention of the appellant is upheld, it amounts to this: if a person owning vacant and unoccupied land sells and conveys land to another, and the vendee does not enter upon and take possession of it, the same remaining vacant and unoccupied for twenty years, the premises reverts to vendor. We do not think appellant's contention is well grounded, nor do we think he can invoke the statute of limitations as a bar in this case. We hold there was no error in the court sustaining the demurrer and dismissing the bill.

The decree of the court below is affirmed.